**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:<br>ADAMSON APPAREL, INC.<br>         DEBTOR,<br><br>The Official Committee of Unsecured Creditors of Adamson Apparel, Inc.,<br><br>         Appellant,<br><br>    v.<br><br>Arnold H. Simon,<br><br>         Appellee. | Case No. CV 11-01204-VAP<br>USBC Case No. 2:04-BK-30799 ER<br>ADVERSARY Case No. 2:06-AP-01953 ER<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S JUDGMENT** |

The Court has received and considered all papers filed in support of Appellant The Official Committee of Unsecured Creditors of Adamson Apparel, Inc.'s Appeal from the United States Bankruptcy Court's judgment on January 14, 2011. This matter is appropriate for resolution without hearing. See Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, the Court affirms the Bankruptcy Court's judgment.

## I. BACKGROUND

Appellant The Official Committee of Unsecured Creditors of Adamson Apparel, Inc. ("Appellant") appeals from the January 14, 2011, judgment of the United States Bankruptcy Court for the Central District of California in favor of Appellee Arnold H. Simon ("Appellee" or "Simon") and against Appellant. (Appeal Opening Br. ("Appellant's Opening Br.") (Doc. No. 19) at 1.)

**A.   Factual Background**

Adamson Apparel, Inc. ("Debtor") manufactures and sells clothing and accessories bearing the "Members Only," "Baby Phat," and "XOXO" trademarks. (Appellant's Excerpt of R. ("R.") at 2.)  On April 18, 2002, Debtor entered into a number of agreements with CIT Group/Commercial Services, Inc. ("CIT") under which Debtor secured a loan from CIT with a lien on its assets and inventory.  (Id. at 2-3.)  Appellee Simon guaranteed the loan, signing a series of guaranties, including:

    1)   Limited Guaranty and Cash Collateral on November 12, 2002 (respectively, "11/12/02 Guaranty" and "11/12/02 Cash Collateral");

    2)   Limited Guaranty on February 11, 2003 ("2/11/03 Guaranty");

    3)   Amended and Restated Limited Guaranty on April 9, 2003 ("4/9/03 Guaranty");

1   4)   Amended and Restated Cash Collateral Pledge
2        Agreement and Amendment to Guaranty on April 25,
3        2003 ("4/25/03 Guaranty and Cash Collateral" or
4        "4/25/03 Guaranty"); and
5   5)   Limited Guaranty on August 5, 2003 ("8/5/03
6        Guaranty"), which was then amended by a Letter
7        Agreement on December 2, 2003.
8  (R. at 3; 100-154.)

10    On December 18, 2003, BP Clothing LLC purchased
11 $4,989,934.65 of inventory from Debtor. (Id.) Debtor
12 directed BP Clothing to pay the purchase price to CIT so
13 as to reduce the amount Debtor owed CIT on the debt.
14 (Id.)

16    On September 28, 2004, Debtor filed a voluntary
17 petition under Chapter 11 of the Bankruptcy Code.  On
18 September 27, 2006, the Bankruptcy Court entered its
19 order authorizing Appellant to prosecute certain
20 litigation claims of Debtor's estate, including those
21 claims against Simon which are the subject of this
22 appeal.

24 **B.   Procedural Background**
25    On September 28, 2006, Appellant filed its Complaint
26 seeking to recover $4,898,934.65 as a preference under 11
27 U.S.C. § 547 from Simon because the Debtor directed this
28

amount as payment on the debt Simon guaranteed to CIT.[1] (R. at 1-4.) On June 4, 2007, Simon filed a Motion for Summary Judgment ("MSJ"), contending he was not a creditor because he had waived his subrogation/indemnity claim against Debtor.[2] (R. at 14.) On July 2, 2007, Appellant filed a Motion to Strike Simon's Reply in support of his MSJ for expanding the issues presented for adjudication beyond those in the original MSJ. (Id.) On July 12, 2007, the Bankruptcy Court granted the MSJ and denied the Motion to Strike. (Id.) Appellant appealed this ruling on August 3, 2007. (Id. at 5.)

Appellant raised four issues on appeal:

1) Did the Bankruptcy Court err in granting summary judgment on a theory that was not identified in Simon's MSJ, but only in the Reply;

---

[1] A preference under Section 547 is a payment to a creditor or insider of a debtor made within 90 days, or one year in the case of an insider, before the date of the filing of the petition for bankruptcy. See 11 U.S.C. § 547(b). This preference period is designed to deter creditors or insiders from influencing an insolvent debtor to distribute its remaining assets in a manner that benefits them. See In re Sufolla, Inc., 2 F.3d 977, 979 (9th Cir. 1993).

[2] Here, a right of subrogation would allow Simon to recover from Debtor payments he made to CIT under the Guaranties. See In re Hamada, 291 F.3d 645 (9th Cir. 2002) ("In general terms, subrogation is the substitution of one party in place of another with reference to a lawful claim, demand or right. It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another.").

    2)    Did the Bankruptcy Court err in declining either to strike that portion of the Reply that argued a theory that was not originally identified in the MSJ or to allow Appellant an opportunity to file a supplemental memorandum addressing that theory;

    3)    Did the Bankruptcy Court err in determining that the waiver of subrogation/indemnity claims in the 8/5/03 Guaranty effected a waiver of partial subrogation/indemnity claim in the 4/25/03 Guaranty; and

    4)    Did the Bankruptcy Court err in holding that an indemnity waiver by an insider guarantor eliminates the insider's creditor status for preference liability purposes.  (R. at 16-17.)

On June 5, 2008, this Court found the Bankruptcy Court did not abuse its discretion when it denied Appellant's Motion to Strike, but reversed the Bankruptcy Court's determination that Simon was entitled to summary judgment.  (Id. at 17.)  The Court held that there was a triable issue of fact as to whether Simon had waived his right of subrogation/indemnity against the Debtor as an insider guarantor of Debtor's obligations to CIT.  (Id. at 18.)

The question turned on whether the agreements between Debtor and Simon would allow Simon to collect against Debtor if CIT seized the collateral Simon provided as a guaranty.  If Simon could collect against Debtor, then as a creditor to Debtor, the $4,898,934.65 transfer from BP to CIT would be a preference. Appellant argued the 4/25/03 Guaranty included a reservation of a partial subrogation/indemnity claim – meaning Simon retained the right to collect against Debtor.  Although the 8/5/03 Guaranty did not include this language, and instead contained a section waiving Simon's right to bring a claim against Debtor for any payments made under the Guaranty, Appellant contended this section did not supersede the reservation of partial subrogation in the 4/25/03 Guaranty.  (R. at 22-23.)  Thus, under the agreements, Appellant argued, Simon could still collect against Debtor as a creditor.

The Bankruptcy Court held, "the waiver contained in the 8/05/03 Guaranty expressly provides that Simon irrevocably waives any and all 'existing' claims against Debtor for subrogation, reimbursement and/or indemnification on account of payments made 'under this Guaranty or otherwise.'"  (R. at 27.)  Thus, the Bankruptcy Court concluded Simon waived whatever subrogation rights against Debtor he may have had under the 4/25/03 Guaranty.  (Id.)

On appeal, however, this Court found that there was a genuine issue of material fact as to whether the 8/5/03 Guaranty superseded the 4/25/03 Guaranty.  (Id. at 28.) Applying New York law, the Court held that the 8/5/03 Guaranty did not state explicit language expressing or manifesting the parties' intention that the 8/5/03 Guaranty supersede the 4/25/03 Guaranty.  (Id. at 30 (citing Globe Food Servs. Corp. v. Consol. Edison Co. of N.Y., 584 N.Y.S.2d 820, 821 (Sup. Ct. 1992)).)  Hence, the Court remanded the case for the Bankruptcy Court to determine triable issues of fact.  (Id. at 31.)

In compliance with the Court's ruling, the Bankruptcy Court conducted a trial on September 15, 2010, and October 18, 2010.  (R. at 83.)  The court bifurcated and determined first the issue of Simon's creditor status. Based on the evidence presented at trial, the court found Plaintiff failed to satisfy its burden of proving Simon's creditor status.  (R. at 90.) As Plaintiff did not establish one of the necessary elements of a preference pursuant to § 547(b)(1), the court did not address evidence presented on any of the other elements.  (Id.) The court entered judgment in favor of Simon on December 17, 2010; Appellant appealed on February 9, 2011.  (Doc. No. 1.)

## II. LEGAL STANDARD

A federal district court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees."

A district court reviews a bankruptcy court's conclusions of law de novo, and the bankruptcy court's factual findings for clear error. In re Greene, 583 F.3d 614, 618 (9th Cir. 2009) (citing In re Raintree Healthcare Corp., 431 F.3d 685, 687 (9th Cir. 2005); In re Salazar, 430 F.3d 992, 994 (9th Cir. 2005)); In re Coleman, 560 F.3d 1000, 1003 (9th Cir. 2009) (citing In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990)). "Mixed questions of law and fact are reviewed de novo." In re Chang, 163 F.3d 1138, 1140 (9th Cir. 1998), cert. denied, 526 U.S. 1149 (1999), (citing In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997) (en banc)); see also Fed. R. Bank. Pro. 8013.

When conducting a "de novo review, the appellate [(i.e., district)] court accords no deference to the trial [(i.e., bankruptcy)] court, but rather determines for itself whether the . . . decision should be reversed on the ground that it is arbitrary, capricious, an abuse of discretion, or contrary to law. Harman v. Apfel, 211

F.3d 1172, 1175 (9th Cir. 2000) (citing Lake Mohave Boat Owners Ass'n. v. Nat. Park Serv., 138 F.3d 759, 762 (9th Cir. 1998)).  In other words, the court does not afford "deference to the [bankruptcy] court's conclusion." Voigt v. Savell, 70 F.3d 1552, 1564 (9th Cir. 1995) (citing Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1454 (9th Cir. 1995)).

Under the clearly erroneous standard, however, "the court must accept the bankruptcy court's findings of fact unless, upon review, the court is 'left with the definite and firm conviction that a mistake has been committed' by the bankruptcy judge."  In re Greene, 583 F.3d at 618 (citing Latman v. Burdette, 366 F.3d 774, 781 (9th Cir. 2004) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

### III. DISCUSSION

Appellant raises the following two issues on appeal:
1) Did the Bankruptcy Court err in granting judgment in favor of Simon based on its determination that Appellee was not a "creditor" of Debtor because Simon had waived his rights as a "creditor" of Debtor; and
2) Did the Bankruptcy Court err in granting judgment in favor of Simon based on its determination that Simon, as insider of Debtor,

>     was able to eliminate his creditor status for
>     preference liability purposes by a waiver of
>     Simon's rights of indemnity/subrogation with
>     respect to Simon's guaranty of Debtor's debt.

(Appeal Opening Br. ("Opening Br.") (Doc. No. 19) at 1-2.)

As discussed below, the Court affirms the Bankruptcy Court's judgment.  The Court finds the Bankruptcy Court's factual findings were not clearly erroneous, nor did the Bankruptcy Court err in its legal determination that Simon was not a creditor of Debtor.

**A.   The Bankruptcy Court Did Not Err in Finding Simon Waived His Subrogation / Indemnity Rights**

Appellant argues the parties' reasonable expectations in drafting the 11/12/02 and 4/25/03 Cash Collaterals was to defer - not permanently waive - Simon's subrogation rights against Debtor until Debtor's obligations to CIT had been fully Satisfied. (Appellant's Opening Br. at 10.)  First, Appellant contends the language in these agreements unambiguously creates a deferral, not a permanent waiver.  (Id. at 7.)  Secondly, even if the language is ambiguous, Appellant submits the ambiguity should be construed in favor of deferral.  (Id. at 10-12.)

Simon contends Appellant's argument fails because the four Guaranties, which were all executed separately from the Cash Collaterals, made no reference to a deferred proof of claim or a termination of waiver once the obligations to CIT were satisfied.  (Appellee's Opening Br. (Doc. No. 20) at 9.)  According to Appellee, the 4/25/03 Cash Collateral did not act as a Guaranty, and the complete waiver in the 4/9/03 Guaranty was still in effect under the terms of the 4/23/03 Amendment.  (<u>Id.</u> at 11.)

Under Section 547, a trustee may avoid any transfer by the debtor to or for the benefit of a creditor.  11 U.S.C. § 547.  Section 101(10) of the Bankruptcy Code (the Code) defines the term "creditor," as an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor.  11 U.S.C. § 101(10).  Section 101(5) of the Code defines the term "claim," as the right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.  11 U.S.C. § 101(5).

The burden is on Appellant to prove Simon is a creditor in order to establish the elements of a preference under Section 547(b)(1).  <u>Batlan v.</u>

11

<u>Transamerica Commer. Fin. Corp. (In re Smith's Home Furnishings, Inc.)</u>, 265 F.3d 959, 967 (9th Cir. 2001) (citing <u>In re Robinson Bros. Drilling, Inc.</u>, 6 F.3d 701, 703 (10th Cir. 1993) ("Under 11 U.S.C. § 547(g), a trustee seeking to avoid an allegedly preferential transfer under § 547(b) 'has the burden of proving by a preponderance of the evidence every essential, controverted element resulting in the preference.'")). In order to show Simon was a creditor here, Appellant must present evidence demonstrating Simon did not waive his subrogation rights under the guaranties he signed in connection with CIT's loans to Debtor.

Appellant first argues the 11/12/02 Cash Collateral and the 4/25/03 Guaranty unambiguously created a deferral - not a permanent waiver - of Simon's subrogation rights. (Appellant's Opening Br. at 7.) Specifically, Appellant contends that even though Paragraph 4(i) of the Cash Collateral Agreements states that Simon waived "any right of subrogation,"[3] when read in conjunction with Paragraph 7(c),[4] the clause only creates a temporal condition on

---

[3] Paragraph 4(i) of the 11/12/02 Cash Collateral and the 4/25/03 Guaranty and Cash Collateral states: "Pledgor waives: (i) all rights to require Pledgee to proceed against any other person, entity or collateral or to exercise any remedy, . . . (iii) any right of subrogation or interest in the Obligations or the Collateral . . . ." (R. at 111, 139.)

[4] Paragraph 7(c) of the 11/12/02 Cash Collateral and the 4/25/03 Guaranty and Cash Collateral states: "Unless (continued...)

12

Simon's waiver. (Id. at 9.) Appellant also raised this argument at trial. (R. at 85.) In its judgment, the Bankruptcy Court did not make an express ruling on this point, and instead interpreted collectively all of the provisions concerning waiver of subrogation rights in the five Guaranties and the two Cash Collaterals based on the parties' expectations. (See R. at 89-90.)

In the initial appeal, the parties disputed the proper interpretation of the language concerning deferral of subrogation rights in the 4/25/03 Guaranty in light of the conflicting provision in the 8/3/03 Guaranty. (R. at 26-31.) As these provisions differed, the Court held there was a triable issue of fact as to the parties'

---

[4](...continued)
and until Pledgee shall have received final payment and satisfaction in full of all of the Obligations and the financing arrangements of Client with Pledgee have been terminated, (i) Pledgor hereby irrevocably and unconditionally defers all statutory, contractual, common law, equitable and all other claims against Client, any collateral for the Obligations or Client Obligations or other assets of Client or any other Obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect to sums paid or payable to Pledgee by Pledgor hereunder and (ii) Pledgor shall not seek payment of any claims described in clause (i) of this Section 7(c) or take any action to collect any such payments and any such payments which may be received by Pledgor shall be promptly delivered to Pledgee. Notwithstanding anything to the contrary in the previous sentence, Pledgor shall be permitted to file a proof of claim or other proof of debt in the form required in connection with any dissolution, winding-up, liquidation or reorganization of Client or any Obligor in any bankruptcy, insolvency or receivership proceedings with respect to Client or any Obligor." (R. at 113, 141.)

intentions in drafting the Guaranties. (Id. at 31.) Thus, the issue before the Bankruptcy Court on remand was not whether the 11/12/02 Cash Collateral and 4/25/03 Guaranty and Cash Collateral contained unambiguous deferrals of Simon's subrogation rights, but rather, what the parties' reasonable expectations were with respect to Simon's waiver of subrogation rights when drafting the Five Guaranties. (Id. at 28, 31.) Whether provisions within the two Cash Collaterals are ambiguous is therefore immaterial. (See R. at 31.) Even if the language were unambiguous, as Appellant argues, the 4/25/03 Guaranty would still conflict with the other four Guaranties. Thus, the Bankruptcy Court did not err in considering the evidence showing the reasonable expectations of the parties - and not ruling directly on Appellant's ambiguity argument - as that was the only issue before it.

Appellants next argue that even if there is an ambiguity in the Cash Collaterals' provisions, the Bankruptcy Court erred in finding the parties intended to create a permanent waiver of subrogation rights in drafting the Cash Collaterals. (Appellant's Opening Br. at 10-12.)

As set forth by both this Court on the initial appeal, and the Bankruptcy Court in its judgment, under New York law, "a guaranty is generally to be construed to give effect to the parties' intentions." (R. at 28-29; 88-89.) "In interpreting a guaranty, the Court will consider the reasonable expectations of the parties and the business purpose to be served by their contract." Caldor, Inc. v. Mattel, Inc., 817 F. Supp. 408, 410 (S.D.N.Y. 1993).

Appellant contends CIT would have no reason to create a waiver of subrogation rights against Debtor after CIT's obligations had been fully satisfied. (Appellant's Opening Br. at 10.) Similarly, Appellant argues, Simon would have no reasonable expectation that CIT would insist he waive his subrogation rights against Debtor after CIT had been paid in full. (Id.) Thus, Appellant submits Simon agreed to defer, not permanently waive, his subrogation rights. (Id.) At trial, however, the Bankruptcy Court found no evidence supported Appellant's theory. (R. at 89-90.) To the contrary, the Bankruptcy Court noted Simon testified at trial that "he did not believe the August Cash Collateral Agreement gave him more rights (i.e. subrogation rights) than the Guaranties." (R. at 90.)

Whether the parties' reasonable expectation in drafting the guaranties was to defer waiver of subrogation rights is a question of fact. See Caldor, 817 F. Supp. at 410-11. The Court reviews the Bankruptcy Court's findings of fact for clear error. In re Greene, 583 F.3d at 618. Here, the record supports the Bankruptcy Court's findings. At trial, Simon testified that based on the contracts he had signed, he believed he had no right to pursue Debtor if CIT took his collateral. (R. at 42.) Appellant presented no evidence to refute Simon's testimony. (See Appellee's Opening Br. at 12-13; R. at 89-90; see also Appellant's Opening Br. at 10 (citing no evidence from the record to support theory).) Thus, the Court does not find the Bankruptcy Court's factual determination that Simon intended to waive permanently his subrogation rights to be clearly erroneous. Rather, the guaranties and the testimony at trial support adequately the Bankruptcy Court's factual findings that the parties' reasonable expectation in drafting the Guaranties was to create a permanent waiver of Simon's subrogation rights.[5]

---

[5] The Court also notes Simon did not file a proof of claim in Debtor's case, (R. at 69), which effectuated a complete waiver of claims against Debtor. See In re Fastrans, Inc., 142 B.R. 241 (Bankr. E.D. Tenn. 1992).

16

Thus, the Bankruptcy Court did not err in finding Appellant failed to show by a preponderance of the evidence that Simon was a "creditor" of Debtor for purposes of proving a preference under Section 547(b)(1).

**B.  The Bankruptcy Court Did Not Err in Finding Simon was Able to Eliminate his Creditor Status for Preference Liability Purposes by a Waiver of his Subrogation Rights**

Appellant next argues a full indemnity waiver by an insider guarantor does not eliminate the insider's status as a "creditor" for preference liability purposes. (Appellant's Opening Br. at 13.)  Appellant contends there is a split of authority on the issue and the "better view" is that an attempted waiver should not "insulate the insider in the event of bankruptcy filing by the primary obliger."  (Id. (citing In re Pro Page Partners, LLC, 292 B.R. 622, 630 (Bankr. E.D. Tenn. 2003)).)

Appellee counters that the controlling Ninth Circuit precedent, In re Sufolla, Inc., 2 F.3d 977 (9th Cir. 1993), does not support this view.  There, the court found a payment to an outside creditor, where the transfer benefits an inside guarantor, amounts to a preference transfer under Section 547(b).  Id. at 979.  The court noted, however, that where the insider

guarantor had waived subrogation rights, this reasoning would not apply because "in such circumstances . . . the insider is no longer a 'creditor.'"  Id. at 983.

Appellant contends the decisions in In re Pro Page Partners, LLC, 292 B.R. 622 (Bankr. E.D. Tenn. 2003), and In re Telesphere Communications, Inc., 229 B.R. 173 (Bankr. N.D. Ill. 1999), are "better" reasoned and urges the Court to adopt those courts' holdings.  (Appellant's Op. Br. at 13-16.)  In Pro Page and Telesphere, the bankruptcy courts held that an insider could not prevent the bankruptcy estate from pursuing her for preferential payments that the debtor made on debts she had guarantied simply by waiving her subrogation rights.  In Pro Page, however, the court drew this conclusion only after examining the language of the guaranty and finding that the guarantor corporate officer had executed the "sham waiver" solely in an attempt to limit his future preference exposure in event that the corporation filed for bankruptcy.  292 B.R. at 629-31.  In Telesphere, the court ruled on a motion for summary judgment on a separate issue, finding that a transfer to a creditor on a fully secured claim is not a preference, and that the collateral securing the debt should be valued at the time of the transfer.  229 B.R. 173.  The court addressed in a footnote the issue of whether an insider guarantor's waiver of subrogation rights would eliminate her status

18

as a "creditor" under Section 547(b).  Id. at 176 n.3.
The court noted that the waiver would be a "sham" if the
insider could still obtain a claim against the debtor
simply by purchasing the lender's note rather than paying
on the guarantee.  Id.

Neither of these holdings, however, are controlling
Ninth Circuit precedent.  In In re XTI Xonix
Technologies, Inc., 156 B.R. 821 (Bankr. D. Or. 1993),
the bankruptcy court found that an insider is not a
creditor of the debtor if the insider waives subrogation
rights in the guarantee.  Thus, a payment on a debt
guaranteed by the insider would not be a preferential
transfer as there would be no transfer "'to or for the
benefit of a creditor.'"  Id. at 826 (quoting 11 U.S.C. §
547(b)(1)).  The court there specifically declined to
rule on the public policy arguments against these kind of
waivers - the same public policy arguments Appellant
urges the Court to consider in ruling on this appeal.
Id. at 833-34.  The Court declines Appellant's invitation
to write new law for this circuit by applying the
reasoning articulated in Pro Page and Telesphere here.

By waiving his subrogation rights, Simon eliminated
his status as a "creditor" for purposes of preference
liability.  Accordingly, the Bankruptcy Court correctly

held that the $4,989,934.65 transfer did not constitute a preference under Section 547(b).

**IV. CONCLUSION**

For the foregoing reasons, the Court affirms the Bankruptcy Court's judgment.

Dated: August 14, 2012

VIRGINIA A. PHILLIPS
United States District Judge