# EXHIBIT A

O

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE:<br>ADAMSON APPAREL, INC.<br>        DEBTOR, | )<br>)<br>)<br>) | Case No. CV 11-01204-VAP<br>USBC Case No. 2:04-BK-30799<br>ER<br>ADVERSARY Case No. 2:06-AP-<br>01953 ER |
| The Official Committee<br>of Unsecured Creditors<br>of Adamson Apparel,<br>Inc., | )<br>)<br>)<br>)<br>) | **ORDER AFFIRMING BANKRUPTCY<br>COURT'S JUDGMENT** |
|                    Appellant, | )<br>) | |
|     v. | )<br>) | |
| Arnold H. Simon, | )<br>) | |
|                    Appellee. | )<br>) | |

The Court has received and considered all papers filed in support of Appellant The Official Committee of Unsecured Creditors of Adamson Apparel, Inc.'s Appeal from the United States Bankruptcy Court's judgment on January 14, 2011. This matter is appropriate for resolution without hearing. See Fed. R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, the Court affirms the Bankruptcy Court's judgment.

EXHIBIT A

1           **I.  BACKGROUND**

2          Appellant The Official Committee of Unsecured

3    Creditors of Adamson Apparel, Inc. ("Appellant") appeals

4    from the January 14, 2011, judgment of the United States

5    Bankruptcy Court for the Central District of California

6    in favor of Appellee Arnold H. Simon ("Appellee" or

7    "Simon") and against Appellant.  (Appeal Opening Br.

8    ("Appellant's Opening Br.") (Doc. No. 19) at 1.)

9

10   **A.   Factual Background**

11         Adamson Apparel, Inc. ("Debtor") manufactures and

12   sells clothing and accessories bearing the "Members

13   Only," "Baby Phat," and "XOXO" trademarks.  (Appellant's

14   Excerpt of R. ("R.") at 2.)  On April 18, 2002, Debtor

15   entered into a number of agreements with CIT

16   Group/Commercial Services, Inc. ("CIT") under which

17   Debtor secured a loan from CIT with a lien on its assets

18   and inventory.  (Id. at 2-3.)  Appellee Simon guaranteed

19   the loan, signing a series of guaranties, including:

20         1)   Limited Guaranty and Cash Collateral on November

21              12, 2002 (respectively, "11/12/02 Guaranty" and

22              "11/12/02 Cash Collateral");

23         2)   Limited Guaranty on February 11, 2003 ("2/11/03

24              Guaranty");

25         3)   Amended and Restated Limited Guaranty on April

26              9, 2003 ("4/9/03 Guaranty");

27

28

1        4)    Amended and Restated Cash Collateral Pledge

2             Agreement and Amendment to Guaranty on April 25,

3             2003 ("4/25/03 Guaranty and Cash Collateral" or

4             "4/25/03 Guaranty"); and

5        5)    Limited Guaranty on August 5, 2003 ("8/5/03

6             Guaranty"), which was then amended by a Letter

7             Agreement on December 2, 2003.

8 (R. at 3; 100-154.)

9

10    On December 18, 2003, BP Clothing LLC purchased

11 $4,989,934.65 of inventory from Debtor.  (_Id._)  Debtor

12 directed BP Clothing to pay the purchase price to CIT so

13 as to reduce the amount Debtor owed CIT on the debt.

14 (_Id._)

15

16    On September 28, 2004, Debtor filed a voluntary

17 petition under Chapter 11 of the Bankruptcy Code.  On

18 September 27, 2006, the Bankruptcy Court entered its

19 order authorizing Appellant to prosecute certain

20 litigation claims of Debtor's estate, including those

21 claims against Simon which are the subject of this

22 appeal.

23

24 **B.**   **Procedural Background**

25    On September 28, 2006, Appellant filed its Complaint

26 seeking to recover $4,898,934.65 as a preference under 11

27 U.S.C. § 547 from Simon because the Debtor directed this

28

1  amount as payment on the debt Simon guaranteed to CIT.[1]

2  (R. at 1-4.)  On June 4, 2007, Simon filed a Motion for

3  Summary Judgment ("MSJ"), contending he was not a

4  creditor because he had waived his subrogation/indemnity

5  claim against Debtor.[2]  (R. at 14.)  On July 2, 2007,

6  Appellant filed a Motion to Strike Simon's Reply in

7  support of his MSJ for expanding the issues presented for

8  adjudication beyond those in the original MSJ.  (Id.)  On

9  July 12, 2007, the Bankruptcy Court granted the MSJ and

10 denied the Motion to Strike.  (Id.)  Appellant appealed

11 this ruling on August 3, 2007.  (Id. at 5.)

12

13      Appellant raised four issues on appeal:

14      1)   Did the Bankruptcy Court err in granting summary

15           judgment on a theory that was not identified in

16           Simon's MSJ, but only in the Reply;

17

18

19      [1] A preference under Section 547 is a payment to a

20 creditor or insider of a debtor made within 90 days, or
   one year in the case of an insider, before the date of

21 the filing of the petition for bankruptcy.  See 11 U.S.C.
   § 547(b).  This preference period is designed to deter

22 creditors or insiders from influencing an insolvent
   debtor to distribute its remaining assets in a manner

23 that benefits them.  See In re Sufolla, Inc., 2 F.3d 977,
   979 (9th Cir. 1993).

24

25      [2] Here, a right of subrogation would allow Simon to
   recover from Debtor payments he made to CIT under the

26 Guaranties.  See In re Hamada, 291 F.3d 645 (9th Cir.
   2002) ("In general terms, subrogation is the substitution

27 of one party in place of another with reference to a
   lawful claim, demand or right.  It is a derivative right,

28 acquired by satisfaction of the loss or claim that a
   third party has against another.").

4

2)   Did the Bankruptcy Court err in declining either
     to strike that portion of the Reply that argued
     a theory that was not originally identified in
     the MSJ or to allow Appellant an opportunity to
     file a supplemental memorandum addressing that
     theory;

3)   Did the Bankruptcy Court err in determining that
     the waiver of subrogation/indemnity claims in
     the 8/5/03 Guaranty effected a waiver of partial
     subrogation/indemnity claim in the 4/25/03
     Guaranty; and

4)   Did the Bankruptcy Court err in holding that an
     indemnity waiver by an insider guarantor
     eliminates the insider's creditor status for
     preference liability purposes.  (R. at 16-17.)

On June 5, 2008, this Court found the Bankruptcy
Court did not abuse its discretion when it denied
Appellant's Motion to Strike, but reversed the Bankruptcy
Court's determination that Simon was entitled to summary
judgment.  (Id. at 17.)  The Court held that there was a
triable issue of fact as to whether Simon had waived his
right of subrogation/indemnity against the Debtor as an
insider guarantor of Debtor's obligations to CIT.  (Id.
at 18.)

1    The question turned on whether the agreements between

2  Debtor and Simon would allow Simon to collect against

3  Debtor if CIT seized the collateral Simon provided as a

4  guaranty.  If Simon could collect against Debtor, then as

5  a creditor to Debtor, the $4,898,934.65 transfer from BP

6  to CIT would be a preference. Appellant argued the

7  4/25/03 Guaranty included a reservation of a partial

8  subrogation/indemnity claim – meaning Simon retained the

9  right to collect against Debtor.  Although the 8/5/03

10  Guaranty did not include this language, and instead

11  contained a section waiving Simon's right to bring a

12  claim against Debtor for any payments made under the

13  Guaranty, Appellant contended this section did not

14  supersede the reservation of partial subrogation in the

15  4/25/03 Guaranty.  (R. at 22-23.)  Thus, under the

16  agreements, Appellant argued, Simon could still collect

17  against Debtor as a creditor.

18

19    The Bankruptcy Court held, "the waiver contained in

20  the 8/05/03 Guaranty expressly provides that Simon

21  irrevocably waives any and all 'existing' claims against

22  Debtor for subrogation, reimbursement and/or

23  indemnification on account of payments made 'under this

24  Guaranty or otherwise.'"  (R. at 27.)  Thus, the

25  Bankruptcy Court concluded Simon waived whatever

26  subrogation rights against Debtor he may have had under

27  the 4/25/03 Guaranty.  (Id.)

28

1    On appeal, however, this Court found that there was a
2    genuine issue of material fact as to whether the 8/5/03
3    Guaranty superseded the 4/25/03 Guaranty.  (Id. at 28.)
4    Applying New York law, the Court held that the 8/5/03
5    Guaranty did not state explicit language expressing or
6    manifesting the parties' intention that the 8/5/03
7    Guaranty supersede the 4/25/03 Guaranty.  (Id. at 30
8    (citing Globe Food Servs. Corp. v. Consol. Edison Co. of
9    N.Y., 584 N.Y.S.2d 820, 821 (Sup. Ct. 1992)).)  Hence,
10   the Court remanded the case for the Bankruptcy Court to
11   determine triable issues of fact.  (Id. at 31.)
12
13    In compliance with the Court's ruling, the Bankruptcy
14   Court conducted a trial on September 15, 2010, and
15   October 18, 2010.  (R. at 83.)  The court bifurcated and
16   determined first the issue of Simon's creditor status.
17   Based on the evidence presented at trial, the court found
18   Plaintiff failed to satisfy its burden of proving Simon's
19   creditor status.  (R. at 90.) As Plaintiff did not
20   establish one of the necessary elements of a preference
21   pursuant to § 547(b)(1), the court did not address
22   evidence presented on any of the other elements.  (Id.)
23   The court entered judgment in favor of Simon on December
24   17, 2010; Appellant appealed on February 9, 2011.  (Doc.
25   No. 1.)
26
27
28

## II. LEGAL STANDARD

A federal district court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees."

A district court reviews a bankruptcy court's conclusions of law de novo, and the bankruptcy court's factual findings for clear error. In re Greene, 583 F.3d 614, 618 (9th Cir. 2009) (citing In re Raintree Healthcare Corp., 431 F.3d 685, 687 (9th Cir. 2005); In re Salazar, 430 F.3d 992, 994 (9th Cir. 2005)); In re Coleman, 560 F.3d 1000, 1003 (9th Cir. 2009) (citing In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990)). "Mixed questions of law and fact are reviewed de novo." In re Chang, 163 F.3d 1138, 1140 (9th Cir. 1998), cert. denied, 526 U.S. 1149 (1999), (citing In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997) (en banc)); see also Fed. R. Bank. Pro. 8013.

When conducting a "de novo review, the appellate [(i.e., district)] court accords no deference to the trial [(i.e., bankruptcy)] court, but rather determines for itself whether the . . . decision should be reversed on the ground that it is arbitrary, capricious, an abuse of discretion, or contrary to law. Harman v. Apfel, 211

1  F.3d 1172, 1175 (9th Cir. 2000) (citing <u>Lake Mohave Boat</u>
2  <u>Owners Ass'n. v. Nat. Park Serv.</u>, 138 F.3d 759, 762 (9th
3  Cir. 1998)).   In other words, the court does not afford
4  "deference to the [bankruptcy] court's conclusion."
5  <u>Voigt v. Savell</u>, 70 F.3d 1552, 1564 (9th Cir. 1995)
6  (citing <u>Kayes v. Pac. Lumber Co.</u>, 51 F.3d 1449, 1454 (9th
7  Cir. 1995)).

8

9      Under the clearly erroneous standard, however, "the
10 court must accept the bankruptcy court's findings of fact
11 unless, upon review, the court is 'left with the definite
12 and firm conviction that a mistake has been committed' by
13 the bankruptcy judge."   <u>In re Greene</u>, 583 F.3d at 618
14 (citing <u>Latman v. Burdette</u>, 366 F.3d 774, 781 (9th Cir.
15 2004) (quoting <u>United States v. United States Gypsum Co.</u>,
16 333 U.S. 364, 395 (1948)).

17

18                    **III. DISCUSSION**
19      Appellant raises the following two issues on appeal:
20      1)   Did the Bankruptcy Court err in granting
21           judgment in favor of Simon based on its
22           determination that Appellee was not a "creditor"
23           of Debtor because Simon had waived his rights as
24           a "creditor" of Debtor; and
25      2)   Did the Bankruptcy Court err in granting
26           judgment in favor of Simon based on its
27           determination that Simon, as insider of Debtor,
28

1              was able to eliminate his creditor status for

2              preference liability purposes by a waiver of

3              Simon's rights of indemnity/subrogation with

4              respect to Simon's guaranty of Debtor's debt.

5 (Appeal Opening Br. ("Opening Br.") (Doc. No. 19) at 1-

6 2.)

7

8     As discussed below, the Court affirms the Bankruptcy

9 Court's judgment.  The Court finds the Bankruptcy Court's

10 factual findings were not clearly erroneous, nor did the

11 Bankruptcy Court err in its legal determination that

12 Simon was not a creditor of Debtor.

13

14 **A.  The Bankruptcy Court Did Not Err in Finding Simon**

15     **Waived His Subrogation / Indemnity Rights**

16     Appellant argues the parties' reasonable expectations

17 in drafting the 11/12/02 and 4/25/03 Cash Collaterals was

18 to defer - not permanently waive - Simon's subrogation

19 rights against Debtor until Debtor's obligations to CIT

20 had been fully Satisfied.  (Appellant's Opening Br. at

21 10.)  First, Appellant contends the language in these

22 agreements unambiguously creates a deferral, not a

23 permanent waiver.  (Id. at 7.)  Secondly, even if the

24 language is ambiguous, Appellant submits the ambiguity

25 should be construed in favor of deferral.  (Id. at 10-

26 12.)

27

28

1     Simon contends Appellant's argument fails because the

2  four Guaranties, which were all executed separately from

3  the Cash Collaterals, made no reference to a deferred

4  proof of claim or a termination of waiver once the

5  obligations to CIT were satisfied.  (Appellee's Opening

6  Br. (Doc. No. 20) at 9.)  According to Appellee, the

7  4/25/03 Cash Collateral did not act as a Guaranty, and

8  the complete waiver in the 4/9/03 Guaranty was still in

9  effect under the terms of the 4/23/03 Amendment.  (Id. at

10  11.)

11

12     Under Section 547, a trustee may avoid any transfer

13  by the debtor to or for the benefit of a creditor.  11

14  U.S.C. § 547.  Section 101(10) of the Bankruptcy Code

15  (the Code) defines the term "creditor," as an entity that

16  has a claim against the debtor that arose at the time of

17  or before the order for relief concerning the debtor.  11

18  U.S.C. § 101(10).  Section 101(5) of the Code defines the

19  term "claim," as the right to payment, whether or not

20  such right is reduced to judgment, liquidated,

21  unliquidated, fixed, contingent, matured, unmatured,

22  disputed, undisputed, legal, equitable, secured, or

23  unsecured.  11 U.S.C. § 101(5).

24

25     The burden is on Appellant to prove Simon is a

26  creditor in order to establish the elements of a

27  preference under Section 547(b)(1).  Batlan v.

28

1  <u>Transamerica Commer. Fin. Corp. (In re Smith's Home</u>

2  <u>Furnishings, Inc.)</u>, 265 F.3d 959, 967 (9th Cir. 2001)

3  (citing <u>In re Robinson Bros. Drilling, Inc.</u>, 6 F.3d 701,

4  703 (10th Cir. 1993) ("Under 11 U.S.C. § 547(g), a

5  trustee seeking to avoid an allegedly preferential

6  transfer under § 547(b) 'has the burden of proving by a

7  preponderance of the evidence every essential,

8  controverted element resulting in the preference.'")).

9  In order to show Simon was a creditor here, Appellant

10  must present evidence demonstrating Simon did not waive

11  his subrogation rights under the guaranties he signed in

12  connection with CIT's loans to Debtor.

13

14      Appellant first argues the 11/12/02 Cash Collateral

15  and the 4/25/03 Guaranty unambiguously created a deferral

16  - not a permanent waiver - of Simon's subrogation rights.

17  (Appellant's Opening Br. at 7.)  Specifically, Appellant

18  contends that even though Paragraph 4(i) of the Cash

19  Collateral Agreements states that Simon waived "any right

20  of subrogation,"[3] when read in conjunction with Paragraph

21  7(c),[4] the clause only creates a temporal condition on

22  _____

23      [3] Paragraph 4(i)of the 11/12/02 Cash Collateral and
the 4/25/03 Guaranty and Cash Collateral states: "Pledgor

24  waives: (i) all rights to require Pledgee to proceed
against any other person, entity or collateral or to

25  exercise any remedy, . . . (iii) any right of subrogation
or interest in the Obligations or the Collateral . . . ."

26  (R. at 111, 139.)

27      [4] Paragraph 7(c) of the 11/12/02 Cash Collateral and
the 4/25/03 Guaranty and Cash Collateral states: "Unless

28                                              (continued...)

12

1  Simon's waiver.  (*Id.* at 9.)  Appellant also raised this

2  argument at trial.  (R. at 85.)  In its judgment, the

3  Bankruptcy Court did not make an express ruling on this

4  point, and instead interpreted collectively all of the

5  provisions concerning waiver of subrogation rights in the

6  five Guaranties and the two Cash Collaterals based on the

7  parties' expectations.  (*See* R. at 89-90.)

8

9      In the initial appeal, the parties disputed the

10  proper interpretation of the language concerning deferral

11  of subrogation rights in the 4/25/03 Guaranty in light of

12  the conflicting provision in the 8/3/03 Guaranty.  (R. at

13  26-31.)  As these provisions differed, the Court held

14  there was a triable issue of fact as to the parties'

15

16          [4](...continued)

17  and until Pledgee shall have received final payment and
   satisfaction in full of all of the  Obligations and the

18  financing arrangements of Client with Pledgee have been
   terminated, (i) Pledgor hereby irrevocably and

19  unconditionally defers all statutory, contractual, common
   law, equitable and all other claims against Client, any

20  collateral for the Obligations or Client Obligations or
   other assets of Client or any other Obligor, for

21  subrogation, reimbursement, exoneration, contribution,
   indemnification, setoff or other recourse in respect to

22  sums paid or payable to Pledgee by Pledgor hereunder and
   (ii) Pledgor shall not seek payment of any claims

23  described in clause (i) of this Section 7(c) or take any
   action to collect any such payments and any such payments

24  which may be received by Pledgor shall be promptly
   delivered to Pledgee.  Notwithstanding anything to the

25  contrary in the previous sentence, Pledgor shall be
   permitted to file a proof of claim or other proof of debt

26  in the form required in connection with any dissolution,
   winding-up, liquidation or reorganization of Client or

27  any Obligor in any bankruptcy, insolvency or receivership
   proceedings with respect to Client or any Obligor."  (R.

28  at 113, 141.)

1  intentions in drafting the Guaranties.  (Id. at 31.)
2  Thus, the issue before the Bankruptcy Court on remand was
3  not whether the 11/12/02 Cash Collateral and 4/25/03
4  Guaranty and Cash Collateral contained unambiguous
5  deferrals of Simon's subrogation rights, but rather, what
6  the parties' reasonable expectations were with respect to
7  Simon's waiver of subrogation rights when drafting the
8  Five Guaranties.  (Id. at 28, 31.)   Whether provisions
9  within the two Cash Collaterals are ambiguous is
10 therefore immaterial.  (See R. at 31.)   Even if the
11 language were unambiguous, as Appellant argues, the
12 4/25/03 Guaranty would still conflict with the other four
13 Guaranties.   Thus, the Bankruptcy Court did not err in
14 considering the evidence showing the reasonable
15 expectations of the parties - and not ruling directly on
16 Appellant's ambiguity argument - as that was the only
17 issue before it.
18
19     Appellants next argue that even if there is an
20 ambiguity in the Cash Collaterals' provisions, the
21 Bankruptcy Court erred in finding the parties intended to
22 create a permanent waiver of subrogation rights in
23 drafting the Cash Collaterals.  (Appellant's Opening Br.
24 at 10-12.)
25
26
27
28

1    As set forth by both this Court on the initial
2  appeal, and the Bankruptcy Court in its judgment, under
3  New York law, "a guaranty is generally to be construed to
4  give effect to the parties' intentions."  (R. at 28-29;
5  88-89.)  "In interpreting a guaranty, the Court will
6  consider the reasonable expectations of the parties and
7  the business purpose to be served by their contract."
8  Caldor, Inc. v. Mattel, Inc., 817 F. Supp. 408, 410
9  (S.D.N.Y. 1993).

10

11    Appellant contends CIT would have no reason to create
12  a waiver of subrogation rights against Debtor after CIT's
13  obligations had been fully satisfied.  (Appellant's
14  Opening Br. at 10.)  Similarly, Appellant argues, Simon
15  would have no reasonable expectation that CIT would
16  insist he waive his subrogation rights against Debtor
17  after CIT had been paid in full.  (Id.)  Thus, Appellant
18  submits Simon agreed to defer, not permanently waive, his
19  subrogation rights.  (Id.)  At trial, however, the
20  Bankruptcy Court found no evidence supported Appellant's
21  theory.  (R. at 89-90.)  To the contrary, the Bankruptcy
22  Court noted Simon testified at trial that "he did not
23  believe the August Cash Collateral Agreement gave him
24  more rights (i.e. subrogation rights) than the
25  Guaranties."  (R. at 90.)

26

27

28

1    Whether the parties' reasonable expectation in

2  drafting the guaranties was to defer waiver of

3  subrogation rights is a question of fact.  See Caldor,

4  817 F. Supp. at 410-11.  The Court reviews the Bankruptcy

5  Court's findings of fact for clear error.  In re Greene,

6  583 F.3d at 618.  Here, the record supports the

7  Bankruptcy Court's findings.  At trial, Simon testified

8  that based on the contracts he had signed, he believed he

9  had no right to pursue Debtor if CIT took his collateral.

10  (R. at 42.)  Appellant presented no evidence to refute

11  Simon's testimony.  (See Appellee's Opening Br. at 12-13;

12  R. at 89-90; see also Appellant's Opening Br. at 10

13  (citing no evidence from the record to support theory).)

14  Thus, the Court does not find the Bankruptcy Court's

15  factual determination that Simon intended to waive

16  permanently his subrogation rights to be clearly

17  erroneous.  Rather, the guaranties and the testimony at

18  trial support adequately the Bankruptcy Court's factual

19  findings that the parties' reasonable expectation in

20  drafting the Guaranties was to create a permanent waiver

21  of Simon's subrogation rights.[5]

22

23

24

25

26  ───────────────────
       [5] The Court also notes Simon did not file a proof of
27  claim in Debtor's case, (R. at 69), which effectuated a
   complete waiver of claims against Debtor.  See In re
28  Fastrans, Inc., 142 B.R. 241 (Bankr. E.D. Tenn. 1992).

1   Thus, the Bankruptcy Court did not err in finding

2   Appellant failed to show by a preponderance of the

3   evidence that Simon was a "creditor" of Debtor for

4   purposes of proving a preference under Section 547(b)(1).

5

6   **B.   The Bankruptcy Court Did Not Err in Finding Simon was**

7   **Able to Eliminate his Creditor Status for Preference**

8   **Liability Purposes by a Waiver of his Subrogation**

9   **Rights**

10  Appellant next argues a full indemnity waiver by an

11  insider guarantor does not eliminate the insider's status

12  as a "creditor" for preference liability purposes.

13  (Appellant's Opening Br. at 13.)   Appellant contends

14  there is a split of authority on the issue and the

15  "better view" is that an attempted waiver should not

16  "insulate the insider in the event of bankruptcy filing

17  by the primary obliger."   (Id. (citing In re Pro Page

18  Partners, LLC, 292 B.R. 622, 630 (Bankr. E.D. Tenn.

19  2003)).)

20

21  Appellee counters that the controlling Ninth Circuit

22  precedent, In re Sufolla, Inc., 2 F.3d 977 (9th Cir.

23  1993), does not support this view.   There, the court

24  found a payment to an outside creditor, where the

25  transfer benefits an inside guarantor, amounts to a

26  preference transfer under Section 547(b).   Id. at 979.

27  The court noted, however, that where the insider

28

1   guarantor had waived subrogation rights, this reasoning

2   would not apply because "in such circumstances . . . the

3   insider is no longer a 'creditor.'"   Id. at 983.

4

5        Appellant contends the decisions in In re Pro Page

6   Partners, LLC, 292 B.R. 622 (Bankr. E.D. Tenn. 2003), and

7   In re Telesphere Communications, Inc., 229 B.R. 173

8   (Bankr. N.D. Ill. 1999), are "better" reasoned and urges

9   the Court to adopt those courts' holdings.  (Appellant's

10  Op. Br. at 13-16.)   In Pro Page and Telesphere, the

11  bankruptcy courts held that an insider could not prevent

12  the bankruptcy estate from pursuing her for preferential

13  payments that the debtor made on debts she had guarantied

14  simply by waiving her subrogation rights.   In Pro Page,

15  however, the court drew this conclusion only after

16  examining the language of the guaranty and finding that

17  the guarantor corporate officer had executed the "sham

18  waiver" solely in an attempt to limit his future

19  preference exposure in event that the corporation filed

20  for bankruptcy.   292 B.R. at 629-31.   In Telesphere, the

21  court ruled on a motion for summary judgment on a

22  separate issue, finding that a transfer to a creditor on

23  a fully secured claim is not a preference, and that the

24  collateral securing the debt should be valued at the time

25  of the transfer.   229 B.R. 173.   The court addressed in a

26  footnote the issue of whether an insider guarantor's

27  waiver of subrogation rights would eliminate her status

28

1  as a "creditor" under Section 547(b).  Id. at 176 n.3.

2  The court noted that the waiver would be a "sham" if the

3  insider could still obtain a claim against the debtor

4  simply by purchasing the lender's note rather than paying

5  on the guarantee.  Id.

6

7      Neither of these holdings, however, are controlling

8  Ninth Circuit precedent.  In In re XTI Xonix

9  Technologies, Inc., 156 B.R. 821 (Bankr. D. Or. 1993),

10 the bankruptcy court found that an insider is not a

11 creditor of the debtor if the insider waives subrogation

12 rights in the guarantee.  Thus, a payment on a debt

13 guaranteed by the insider would not be a preferential

14 transfer as there would be no transfer "'to or for the

15 benefit of a creditor.'"  Id. at 826 (quoting 11 U.S.C. §

16 547(b)(1)).  The court there specifically declined to

17 rule on the public policy arguments against these kind of

18 waivers - the same public policy arguments Appellant

19 urges the Court to consider in ruling on this appeal.

20 Id. at 833-34.  The Court declines Appellant's invitation

21 to write new law for this circuit by applying the

22 reasoning articulated in Pro Page and Telesphere here.

23

24     By waiving his subrogation rights, Simon eliminated

25 his status as a "creditor" for purposes of preference

26 liability.  Accordingly, the Bankruptcy Court correctly

27

28

Case 2:11-cv-01204-VAP   Document 24   Filed 08/15/12   Page 20 of 20   Page ID #:439

1  held that the $4,989,934.65 transfer did not constitute a

2  preference under Section 547(b).

3

4                         **IV.  CONCLUSION**

5       For the foregoing reasons, the Court affirms the

6  Bankruptcy Court's judgment.

7

8  Dated: <u>August 14, 2012</u>

                          VIRGINIA A. PHILLIPS
9                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              20